**In re LANDAU BOAT COMPANY, Debtor.**

**Bankruptcy No. 80–00716–S–11.**

United States Bankruptcy Court, W. D. Missouri, S. D.

Feb. 4, 1981.

See also Bkrtcy., 8 B.R. 432.

Gary A. Love, Springfield, Mo., for debtor.

Gary A. Nelms, Chairman Creditors Committee.

## ORDER DENYING MOTION UNDER § 1129(b)

JOEL PELOFSKY, Bankruptcy Judge.

In this Chapter 11 proceeding, the debtor has proposed a plan with four classes of creditors. Administrative costs constitute Class One; Secured claims constitute Class Two. Both of these classes are to be paid in full. Class Three is composed of unsecured creditors. This class is to be paid 10% of their allowed claims. Class Four is composed of stockholders who are to receive no distribution under the plan but will retain their interest in the corporation.

The plan did not receive the votes necessary to be confirmed. An effort to designate the vote of Reynolds Metals Company as not in good faith was rejected by the Court. Order of January 9, 1981. At the time debtor filed its plan, it moved the Court to confirm the plan under § 1129(b) of the Code, Title 11, U.S.C. Premature at that time, the Motion is now timely and will be considered.

Section 1129(b) provides, in part, that "Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted the plan."

Paragraph 8 refers to classes which have accepted, or are not impaired under the plan. In this plan, the unsecured class is impaired and has not accepted the plan. Section 1129(b)(2) sets out criteria for "cram down" as it affects unsecured creditors.

"(2) For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:

. . . . .

(B) With respect to a class of unsecured claims—

(i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain on account of such junior claim or interest any property."

The issue of priority in corporate reorganization has a long history, originating in the railroad reorganizations of the turn of the century. In *Louisville Trust Co. v. Louisville, N. A. & C. Ry. Co., et al.*, 174 U.S. 674, 19 S.Ct. 827, 43 L.Ed. 1130 (1899), the bondholders and the mortgage holders arranged a foreclosure of the railroad property. The Supreme Court condemned the transaction in no uncertain terms.

" . . . a foreclosure which attempts to preserve any interest or right of mortgagor in the property after the sale must necessarily secure and preserve the prior rights of general creditors thereof. This is based upon the familiar rule that the stockholders interest in the property is subordinate to the rights of creditors. And any arrangement of the parties by which the subordinate rights and interests of the stockholders are attempted to be secured at the expense of the prior rights of either class of creditors comes within judicial denunciation." 174 U.S. at 684, 19 S.Ct. at 830.

This statement of principle was broadened to reach reorganization foreclosures in *Northern P. R. Co. v. Boyd*, 228 U.S. 482, 33 S.Ct. 554, 57 L.Ed. 931 (1913). Here again the bondholders and stockholders agreed to create a new company, eliminating the claims of general creditors.

"As between the parties . . . the sale was valid. As against creditors, it was a mere form . . .

The invalidity of the sale flowed from the character of the reorganization agreement regardless of the value of the property, for in cases like this the question must be decided according to a fixed principle, not leaving the rights of the creditors to depend upon the balancing of evidence as to whether, on the day of sale, the property was insufficient to pay prior encumbrances . . .

If the value of the road justified the issuance of stock in exchange for old shares, the creditors were entitled to the benefit of that value, whether it was present or prospective, for dividends or only for purposes of control. In either event it was a right of property out of which the creditors were entitled to be paid before the stockholders could retain it for any purpose whatever." 228 U.S. at 506–508, 33 S.Ct. at 561.

The fixed principle, set out in *Louisville Trust Co.* and restated in *Boyd*, was further explicated in *Case v. Los Angeles Lumber Products Co. Ltd.*, 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110 (1939). The Court noted that creditors were entitled to priority over stockholders to the extent of their debt and that the continued participation of stockholders in a reorganization would depend upon new equity contributions. The Court went on to comment upon the notion that benefit under the plan to creditors was immaterial. "The fact that bondholders might fare worse as a result of a foreclosure and liquidation than they would by taking a debtor's plan under Section 77B can have no relevant bearing on whether a proposed plan is 'fair and equitable' under that section." 308 U.S. at 123, 60 S.Ct. at 11.

The Eighth Circuit follows the reasoning of these cases.

"Stockholders may not better their position at the cost of bondholders or other creditors and to justify a retention of stock interest by stockholders of a debtor it must appear that they have furnished some compensatory additional consideration or have an equity in the estate of the debtor after the rights of creditors are fully provided for." *Sophian v. Congress Realty Co.*, 98 F.2d 499, 502 (8th Cir. 1938).

Here the plan proposes to compromise the unsecured debts at 10%. The fund to pay this amount is to be received from outside investors, otherwise unidentified. There is nothing in the plan to suggest that the existing stockholders will provide new equity as a condition of retaining their interest. It is apparent from the schedules that the assets of the debtor are insufficient to pay the unsecured creditors in full and, therefore, the stockholders have no equity in the debtor.

The absolute priority rule of *Boyd*, as embodied in Section 1129(b), requires that a senior class of debt is to be paid in full if a junior class is to receive any property. Here, the unsecured debt is not being paid in full, while the stockholders, a class junior to the unsecured, retains its equity interest. Does the retention of an equity interest constitute the receiving of property if the interest, as here, has no value? The answer seems to be clearly yes.

In *Boyd*, the Court suggested that the value of the property received by the junior class need not be cash but could also be "prospective, for dividends or only for purposes of control." Quite clearly, retention of the stockholders interest in this case is for prospective earnings and for control. But also, although this is more speculative, if the debts of the unsecured creditors are compromised, the stockholders may realize some immediate equity value. The statute prohibits such a result. See Klee, "All You Ever Wanted to Know About Cram Down Under the New Bankruptcy Code", 53 Bankruptcy Law Journal 133, 143–150 (Spring 1979); comments concerning Section 1129(b) contained in House Report 95–595, reprinted in App. 2, Collier on Bankruptcy 413–417 (15th Ed.); and 5 Collier on Bankruptcy ¶ 1129.03 (15th Ed.).

Under the pending plan, the unsecured creditors are not paid an amount equal to the allowed amount of their claims and a junior class (the stockholders) receives property. The plan is not fair and equitable and cannot be confirmed under the provisions of Section 1129(b). Debtor's Motion is DENIED.