In re Marion C. EAST, Sr. (S.S. # 438–52–9122), Debtor.

**Bankruptcy No. 84–00538.**

United States Bankruptcy Court, M.D. Louisiana.

July 19, 1985.

Dan B. McKay, Bunkie, La., for American Druggist Ins. Co.

William H. Patrick, III, Baton Rouge, La., for debtor.

## REASONS FOR DENIAL OF PLAN CONFIRMATION

WESLEY W. STEEN, Bankruptcy Judge.

### I. Jurisdiction of the Court

This is a proceeding arising under Title 11 U.S.C. The United States District Court for the Middle District of Louisiana has original jurisdiction pursuant to 28 U.S.C. § 1334(b). Pursuant to Local Rule 29, under the authority of 28 U.S.C. § 157(a), the United States District Court for the Middle District of Louisiana referred all such cases to the Bankruptcy Judge for the district and ordered the Bankruptcy Judge to exercise all authority permitted by 28 U.S.C. § 157.

This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(L); pursuant to 28 U.S.C. § 157(b)(1), the Bankruptcy Judge for this district may hear and determine all core proceedings arising under Title 11 referred under 28 U.S.C. § 157(a), and the Bankruptcy Judge may enter appropriate orders and judgments.

No party has objected to the exercise of jurisdiction by the Bankruptcy Judge. No party has filed a motion for discretionary abstention pursuant to 28 U.S.C. § 1334(c)(1) or pursuant to 11 U.S.C. § 305. No party has filed a motion under 28 U.S.C. § 157(d) to withdraw all or part of the case or any proceeding thereunder, and the District Court has not done so on its own motion.

### II. Facts

On July 30, 1984, Marion C. East, Sr. (hereinafter "the Debtor") filed a petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor's plan of reorganization was filed with the Court on November 1, 1984; the confirmation hearing was held May 13, 1985. The proposed plan

defines five classes of claimants. Classes 1 and 2 include those creditors entitled to administrative priority under 11 U.S.C. § 507(a). Creditors in Classes 3 and 4 are fully secured; they would retain their liens and would be paid in full as provided in their respective loan agreements. Class 5 includes all unsecured creditors; the plan proposes to pay Class 5 claimants 15% of the allowed amount of their claims. Class 5 is impaired. There are no classes specified in the plan that are junior to Class 5. However, the Debtor is an individual; under the plan, the Debtor would retain all other rights to property of the estate and all rights to property subsequently acquired.

Insufficient acceptances were received to meet the plan confirmation requirements of § 1129(a)(8), so the Debtor requested confirmation under § 1129(b). The Debtor testified that he was insolvent and that creditors would receive more under the plan than they would receive in liquidation. No other substantial evidence was offered at the confirmation hearing. No creditors participated at the hearing or objected to the plan. The Court denied confirmation under § 1129(b) for the stated reason that 11 U.S.C. § 1129(b)(2)(B) provides that a plan is not fair and equitable when there is a junior class (in this case the Debtor) retaining property while a senior class (in this case the unsecured claimants) has not been paid the full amount of the allowed claims.

### III. Argument Against the Court's Ruling

Counsel for the Debtor enthusiastically protests this ruling, asserting that the requirements of § 1129(b)(2)(B)(ii) are met whenever the Debtor is insolvent. Counsel contends that the Debtor has not "retained" anything under the plan if he is insolvent. Counsel asserts that the instant ruling would effectively eliminate the "cram down" (§ 1129(b)) confirmation alternative for individuals unless the plan proposes to pay a 100% dividend to unsecured creditors;[1] therefore, he asserts, this Court's interpretation of § 1129(b)(2)(B)(ii) violates express Congressional policy of affording Chapter 11 relief to individuals.

### IV. Statutory Authority and Legislative History

Chapter 11 of the Bankruptcy Code establishes a method under which creditors' rights may be modified under a "plan" confirmed by the court. Section 1129 states the requirements for plan confirmation. Section 1129(a)(8) provides that with regard to impaired classes, the plan may be confirmed only if the class has "accepted the plan." A plan is "accepted" by creditors in an impaired class if the plan receives the favorable vote of one-half of the voting claimants whose claims amount to two-thirds of the claims represented by those voters: § 1126(c). As noted, the plan in this case did not receive sufficient votes to meet the requirements of § 1129(a)(8).

However, 11 U.S.C. § 1129(b) provides that:

"(1) ... if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

"(2) For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements....

---

1. Counsel's analysis can be summarized as follows. Individuals who file Chapter 11 cases must necessarily retain a residual interest in their economic future since there is no effective way to alienate all future accessions to their net worth; therefore, counsel would contend, if this Court is correct that such retention is within the meaning of "property" not allowed to be re-tained under § 1129(b)(2)(B)(ii), then that subsection must be unavailable to individuals. Consequently, counsel contends that § 1129(b)(2)(B)(ii) would be meaningful only in corporate reorganizations where the equity claimants (the most junior class) could give up all of their rights to a senior class that is not paid in full.

"(B) With respect to a class of unsecured claims—...

"(ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property."

This provision has its origins in the absolute priority rule established by *Northern Pacific Railway v. Boyd.*[2] The Supreme Court held that the plan of reorganization in that case did not meet statutory requirements for confirmation because the shareholders of the insolvent corporation retained their rights while the creditors of the corporation had not been paid in full.

The legislative history of § 1129(b)(2)(B)(ii) states:

"Subsection (b) permits the court to confirm a plan notwithstanding the failure of compliance with paragraph (8) of subsection (a). The plan must comply with all other paragraphs of subsection (a), including paragraph (9). This subsection contains the so-called cram down. It requires simply that the plan meet certain standards of fairness to dissenting creditors or equity security holders. The general principle of the subsection permits confirmation notwithstanding nonacceptance by an impaired class if that class and all below it in priority are treated according to the absolute priority rule ... The court may confirm over the dissent of a class of unsecured claims, including priority claims only if the members of the class are unimpaired, if they will receive under the plan property of a value equal to the allowed amount of their unsecured claims, or if no class junior will share under the plan. That is, if the class is impaired, then they must be paid in full or, if paid less than in full, then no class junior may receive anything under the plan. This codifies the absolute priority rule from the dissenting class on down." 1st Sess. 413 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6369.

## V. The Jurisprudence

The jurisprudence clearly establishes the rule as stated. The seminal case is *In re Landau Boat Company*[3] which involved four classes of claims. Classes 1 and 2 were secured creditors; Class 3 was composed of unsecured creditors who were to be paid 10% of their allowed claims; Class 4 was made up of shareholders who were to receive no distribution under the plan, but would retain their rights in the corporation. The court held that the retention of an equity interest constituted the retention of property, and, therefore, the plan could not be confirmed under the provisions of § 1129(b).[4]

*In re Knutson*[5] dealt with the reorganization of a dairy farm. Under the proposed plan, the debtor would retain all of the property of the estate; the funds needed to pay creditors were to be generated through the operation of the dairy farm. The unsecured creditors were to receive no payments under the plan. The court found that the plan called for the debtor to retain property while a class superior to the debt-

---

2. 228 U.S. 482, 33 S.Ct. 554, 57 L.Ed. 931 (1913).

3. 8 B.R. 436 (Bkrtcy W.D.Mo.S.D., 1981).

4. The court stated:
   "The absolute priority rule of *Boyd* as embodied in section 1129(b) requires that a senior class of debt is to be paid in full if a junior class is to receive any property. Here, the unsecured debt is not being paid in full, while the stockholders, a class junior to the unsecured, retains its equity interest. Does the retention of an equity interest constitute the receiving of property if the interest, as here, has no value? The answer here seems to be clearly yes.

"In *Boyd*, the court suggested that the value of the property received by the junior class need not be cash but could also be 'prospective, for dividends or only for purposes of control.' Quite clearly the retention of the stockholders' interest in this case is for prospective earnings and for control. But also, although this is more speculative, if the debts of the unsecured creditors are compromised, the stockholders may realize some immediate equity value." *Id.* at 438, 439.

5. 40 B.R. 142 (Bkrtcy W.D.Ws., 1984).

or, the unsecured creditors, received no payment; therefore, the plan was not fair and equitable under the terms of § 1129(b), and it could not be crammed down.

The plan in *In re Tomlin* [6] provided that the unsecured creditors would be paid 6% of their claim. The debtor would retain real and personal property of the estate under the plan. The court found that the plan did not meet the requirements of the cram down provisions of § 1129 and denied confirmation of the plan.[7]

*In the Matter of Huckabee Auto Company* [8] dealt with a Chapter 11 plan filed by two related companies whose cases were consolidated. A creditor, whose claim was secured by treasury stock, objected to confirmation under § 1129(b). Under the plan, the creditor would receive nothing, and the shareholders would retain their interests. After examining the history of the absolute priority rule, the court held that the stock interest retained by the shareholders was a retention of property.[9]

■ In summary, the jurisprudence apparently unanimously holds that if the Debtor retains any property, even control or the potential for future earnings, the cram down provisions of § 1129(b)(2)(B)(ii) are not met.

## VI. The Commentators

The commentators support this conclusion. The plan "... may provide any treatment for the class as long as no junior claim or interest will participate in the plan or will retain any claim against or interest in the debtor." [10]

## VII. Dispositon of Debtor's Contentions

■ The Debtor first argues that there is no class under the plan that retains an interest in property. This argument carries no weight; it is clever semantics without substance. Clearly, the plan contemplates that the Debtor, an individual, will retain ownership of the property; he retains the equity (even if it has negative value) or residual interest in his patrimony. Merely failing formally to designate him as a class and failing to give that class a number does not sidestep the absolute priority rule of § 1129(b)(2)(B)(ii).

■ The Debtor next argues that if he is insolvent the plan can be confirmed under § 1129(b)(2)(B)(ii) notwithstanding the retention of a residual equity interest in the reorganized entity because such an equity interest has a negative value. This argu-

---

**6.** 22 B.R. 876 (Bkrtcy, M.D.Al., 1982).

**7.** "The Debtor under the plan will retain his ownership interests in both real and personal property of the estate and, if the plan is successfully consummated, he will ultimately own such property free and clear by reason of having paid the mortgage liens thereon.

"Ownership interests are junior to all creditors' claims including unsecured claims. *In re Landau Boat Company* ... Thus the plan in the present case does not meet the requirements of Section 1129(b)(2)(B)(ii) and can not be confirmed under the so-called cram down provisions of 1129(b) for the reason that it does not meet this fair and equitable test." *Id.* at 877.

**8.** 33 B.R. 132 (Bkrtcy, M.D.Ga., 1981).

**9.** The court stated:

"The retention of stock by the Class 13 interest holders carries with it control of the reorganized corporate entities with all of their potential for future growth. Debtors have presented little, if any, evidence as to the

capitalization of prospective earnings from which the court can determine the value of these Class 13 interests, but for Debtors to simply urge that the stock is worthless because the Debtors are insolvent at the present time is an unrealistic approach which loses sight of the potential value of these reorganized entities ... In the case at bar, the court must find that the Class 13 [shareholders] interest holders are retaining property and that since rejecting classes above Class 13 are not being paid in full, that the plan does not comply with the requirements of cram down." *Id.* at 141.

**10.** Klee, *All You Ever Wanted to Know About Cram Down Under the New Bankruptcy Code,* 53 Am.Bankr.L.J. 133, 144 (1979).

In accord, Broude, *Cram Down and Chapter 11 of the Bankruptcy Code: the Settlement Imperative,* 39 Bus.Law. 441, 453 (1984); Coogan, *Confirmation of a Plan Under the Bankruptcy Code,* 32 Case W.Res. 301, 335 (1982); and Labovitz, *Outline of "Cram Down" Provisions Under Chapter 11 of the Bankruptcy Reform Act of 1978,* 86 Com.L.J. 51 (1981).

ment fails for two reasons. First, § 1129(b)(2)(B)(ii) does not deal with "valuable" or "substantial" or even "positive value" property; that section provides that the plan cannot be crammed down if the junior interest receives or retains "*any* property." [Emphasis supplied.] Therefore, the value of the interest retained, and, consequently, the fact of insolvency as relevant thereto is not at issue.[11] Second, and more realistically, the Court is skeptical of testimony that the Debtor's retained interest has negative value; the debtor would be well advised in such a situation to liquidate under Chapter 7 and to obtain a discharge of all debt. The debtor who proposes a Chapter 11 plan that provides for the debtor to retain a residual interest may *assert* that he retains no property of value under the plan, but his own plan contradicts his assertion. Assuming that the debtor is financially rational, he would not attempt to meet the plan's obligations if there is negative value in what he retains.[12] Logically, the Debtor must perceive value in what he retains or he would not retain it. It is the difficulty and uncertainty of appraisal and valuation that provides the *appearance* of worthlessness.[13] The proof in this case consisted merely of the Debtor's testimony regarding the value of his assets and hence his balance sheet insolvency. Such proof is not credible in light of the Debtor's willingness to dedicate future earnings to pay the indebtedness in order to keep that allegedly worthless property.

Third, as noted above, Debtor's counsel argues that the holding in this case denies the cram down confirmation alternative to individuals. Such a result is inappropriate, he argues, because Congress intended Chapter 11 relief to be available to individuals. This argument does not succeed for three reasons. First, Congressional intent for Chapter 11 relief to be available to individuals does not necessarily include the intent for cram down to be available to individuals or for cram down to be less restrictive for individuals than for corporations. Second, cram down is still available, in any case, to individuals by paying the creditors 100% of their claims: § 1129(b)(2)(B)(i).

To understand the third reason why counsel's third argument fails, one must recall the reasons for counsel's conclusion. Counsel argues that the instant interpretation allows § 1129(b)(2)(B)(ii) confirmation only when all equity interests can be "given up" to a higher, dissenting, impaired class; since individuals cannot give up their future rights (as corporate shareholders can by giving up their stock), counsel argues that § 1129(b)(2)(B)(ii) is effectively denied to individuals.

Counsel's analysis might be valid if one assumes that the only way to satisfy § 1129(b)(2)(B)(ii) is by junior claimants "giving up" their rights to senior claimants. Some cases have suggested another

---

**11.** Counsel might be confusing this issue with the confirmation requirement in § 1129(a)(7). That section requires that each member of an impaired class who has not accepted a plan "crammed down" under § 1129(b)(2) must receive at least the value of the security for the claim. With regard to unsecured creditors, proof of mere insolvency might be enough to meet this requirement. However, § 1129(a)(7) is a requirement *in addition* to, not as an alternative to, § 1129(a)(8) and § 1129(b). It is failure to meet § 1129(a)(8) and § 1129(b)(2)(B) that is the basis of this decision, resulting from a conclusion that mere insolvency is *not* sufficient to meet the requirements of § 1129(b)(2)(B)(ii). In addition, as noted elsewhere, because of this conclusion of law, the Court need not decide whether the scant evidence of insolvency presented at trial was sufficient to meet the Debtor's burden of proof,

especially considering the logical inconsistency of the Debtor's position as explained in the "Second" reason set forth following this footnote in the full text.

**12.** Even a financially irrational debtor who simply wanted to pay his debts (who is, therefore, perhaps ethically, if not financially, rational) would choose the Chapter 7 solution. There is no prohibition of his paying debts after discharge: § 524(f).

**13.** Thus, even an insolvent debtor has probably retained something of value on account of his crammed down plan. But the jurisprudence suggests that the retained property need not have specific, allocable, salable value. *Boyd (supra)* holds that mere retention of control is sufficient to result in failure of the plan to satisfy the absolute priority test.

alternative: junior claimants could, in essence, purchase their former rights by injection of new funds into the debtor entity. *In re Marston Enterprises,* 13 B.R. 514 (Bkrtcy E.D.NY, 1981) involved such issues; a creditor urged that the plan was not fair and equitable because the shareholders would retain an equity interest in the corporation. In that case, the plan proposed that the existing equity claimants would cancel their rights, and new equity participation would be based on a fresh contribution of capital.

The court stated:

"There is no statutory prohibition against original shareholders making a substantial necessary capital contribution in consideration for which they received [sic] shares of stock in the reorganized corporation.... If $300,000 to $400,000 of new money were needed to fund the plan, and consideration came from new investors who were not shareholders, it would not violate the fair and equitable rule to permit them to contribute capital and receive shares of stock in the reorganized corporation. There is no reason why investors of new capital who happen to be shareholders, whose equity interest as old shareholders is extinguished, should be disqualified from investing in the reorganized corporation, where their contribution is substantial as is the case herein." *Id.* at 518.

Thus, it might be that the injection of "outside capital" would allow cram down in an individual case. It is easier in a corporate context to consider the concept of the injection of outside capital; when an individual is involved, it is difficult to imagine the source of such funds: perhaps a relative or friend might make a gift; perhaps there are other sources. But these flights of fantasy are unnecessary in this case since no fresh injection of capital is proposed. It would appear, in most cases, that counsel is correct in concluding that 1129(b)(2)(B)(ii) is not available to individuals. The short answer to that complaint is that the plain requirements of § 1129(b)(2)(B)(ii) cannot be ignored on ac-

count of an amorphous Congressional objective to make Chapter 11 relief available to individuals. The long answer is that counsel has not demonstrated his proposition that this ruling results in the contradiction he asserts; perhaps the *Marston Enterprises* solution is available to individuals. That "solution" presents its own set of highly complex issues, the most obvious of which is the extremely difficult valuation hearing that would be involved.

### VIII. Conclusion

The preceding conclusion of law is based on statutory interpretation. The conclusion is that mere insolvency is insufficient to permit plan confirmation under § 1129(b)(2)(B)(ii) when the debtor is an individual. While the result might appear harsh on cursory analysis, that appearance recedes upon careful examination. The result is that unless a majority of his creditors agree otherwise, an individual (despite negative vote of his creditors) can keep all of his property if he pays all of his debt: § 1129(b)(2)(B)(i); or, the individual can give up all of his nonexempt property and be freed from all of his debt: Chapter 7; what he cannot do is keep all of his property while paying only part of his debt.

### IX. Confirmation Denied

For the reasons set out above, confirmation of the Debtor's plan is DENIED because he has failed to meet the requirements of § 1129. A separate order is entered this date.