In re H. Dean **STEGALL**, Sandra Lorene Stegall, Debtors-in-Possession.

Bankruptcy No. 185–02080.

United States Bankruptcy Court, C.D. Illinois.

Aug. 20, 1986.

Barry M. Barash, Galesburg, Ill., for debtor.

Douglas R. Lindstrom, Galesburg, Ill., for Federal Land Bank.

## OPINION

LARRY LESSEN, Bankruptcy Judge.

The issue before the Court is whether the Absolute Priority Rule, as codified in 11 U.S.C., § 1129(b)(2)(B)(ii), permits the Debtors to retain an equity interest in their farming operation on the strength of their promise to provide their labor and services in conducting the farming operation according to the Plan.

The Debtors, H. Dean Stegall and Sandra Lorene Stegall, filed their Chapter 11 Petition on September 12, 1985. On October 23, 1985, they filed a Disclosure Statement and Plan of Reorganization. The Disclosure Statement was approved and a copy of the Plan and Ballots were forwarded to the creditors. A report of the balloting indicates that a sufficient number of creditors in the various impaired classes have accepted the Plan for it to be confirmed in spite of the rejection of the Federal Land Bank and the unsecured class of creditors provided the objections of the Federal Land Bank are disallowed. A confirmation hearing was held and substantial testimony was received on the Plan and the objections to it.

The Federal Land Bank has raised five objections to the Plan:

1. The value of the farm land as set forth in the Cash Flow Statements is incorrect.

2. The Plan is not feasible based upon figures contained in the Cash Flow Statement attached to the Disclosure Statement.

3. The Plan does not propose to make a first payment to the Federal Land Bank on its secured claim until March 1, 1987, and, in light of deteriorating farm values, this does not provide adequate protection to them.

4. The proposed payment of 10.3% interest does not equal the present value of the allowed claim as required by 11 U.S.C. § 1129(b)(2)(A)(i)(II).

5. The Plan does not meet the requirements of 11 U.S.C. § 1129(b)(2)(B)(ii).

Because the resolution of this case turns on our interpretation of § 1129(b)(2)(B)(ii), a detailed discussion of the Federal Land Bank's first four objections is unnecessary. Suffice it to say, the proposed Plan meets

all of these objections. Therefore, the first four objections are denied.

Section 1129 of the Bankruptcy Code provides the conditions which must be met in order to confirm a plan. Section 1129(a)(8) provides that with regard to impaired classes, the Plan may be confirmed only if the class has "accepted the Plan." Section 1126(c) provides that a Plan is "accepted" by creditors in an impaired class if the Plan receives the favorable vote of one-half of the voting claimants holding two-thirds in amount of the allowed claims of such class. The Plan in this case did not receive sufficient votes from the unsecured class of creditors to meet the requirements of Section 1129(a)(8).

However, § 1129(b)(1), the "cram-down" section of the Code, provides that if all of the requirements of subsection (a) are met except paragraph (8), the Court, on request, may still confirm the Plan if it finds the Plan does not discriminate unfairly and is fair and equitable to any class of claims that is impaired and has not accepted the Plan. The Debtors have requested confirmation of their Plan over the unsecured creditors' objection pursuant to § 1129(b)(1).

In order to be confirmed under § 1129(b)(1), the Plan must satisfy the requirements of 11 U.S.C. § 1129(b)(2)(B). Section 1129(b)(2)(B) states that the condition that a Plan be fair and equitable includes the following requirements:

(B) With respect to a class of unsecured claims—
  (i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the Plan, equal to the allowed amount of such claim; or
  (ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain on account of such junior claim or interest any property.

The Plan in this case does not propose to pay the unsecured claimants the full amount of their allowed claims. Therefore, the requirement of Subsection (i) is not met.

■ The alternative requirement of Subsection (ii) is commonly characterized as an "absolute priority rule." *In re Potter Materials Service, Inc.*, 781 F.2d 99, 101 (7th Cir.1985); *In re East*, 57 B.R. 14, 16 (Bkrtcy.M.O.La.1985). Under this rule, if an unsecured class will receive less than full value on the allowed amount of their unsecured claims, then the Debtor, as a junior claimholder, may not receive or retain any claim or interest in any property under the plan. *In re Potter Material Service, Inc., supra*, 781 F.2d at 101.

In the case at bar, the Debtors, who are farmers, propose under the plan to retain an interest in a substantial amount of personal property and real estate, including, but not limited to, their farming equipment and the 200.38 acres which they farm. Moreover, the unsecured creditors will not receive under the plan property of a value equal to the allowed amount of their unsecured claims. Therefore, the plan is not fair and equitable under the terms of Sec. 1129(b)(2)(B)(ii), and it may not be confirmed.

■ The courts have recognized only one exception to the absolute priority rule. Under this exception, an individual owner may retain an interest in the Debtor estate so long as he invests new capital into the estate. *In re Potter Materials Service, Inc., supra*, 781 F.2d at 101. See *Case v. Los Angeles Lumber Products Co., Ltd.*, 308 U.S. 106, 121, 60 S.Ct. 1, 10, 84 L.Ed. 110 (1939); *In re U.S. Truck Company*, 47 B.R. 932, 941 (E.D.M.1985); *In re Marston Enterprises, Inc.*, 13 B.R. 514, 518 (Bkrtcy.E.D.N.Y.1981). The new capital investment must represent a substantial contribution and equal or exceed the value of the retained interest in the estate. *In re Potter Materials Service, Inc., supra*, 781 F.2d at 101.

The Debtors attempt to qualify for the "new capital" exception by providing their labor and services in conducting the farming operation during the period of the plan.

Mr. Stegall will also apply his pension to funding the plan. In addition, Mr. Stegall's brother has agreed to cash rent approximately 140 acres of farm land for the 1986 season. He will advance the rent and all costs and expenses for farming, but will split any net profit from this acreage with the Debtors. Finally, Gaye Stegall will pay off the $1000 debt to the Anderson State Bank on her car. The Debtors are apparently co-signers on this note.

■ The fatal flaw in the Debtors' plan is that it does not propose any funding up front which would constitute a contribution of new capital. A new capital investment must be a present contribution, not a contribution in the future. *In re Pecht*, 57 B.R. 137, 140–41 (Bkrtcy.E.D.Va.1986). A Debtor may not satisfy the new capital requirement with the promise of his own labor. The plan at bar provides that the Debtors shall receive living expenses. It also provides that Mr. Stegall's small pension will be used for his living expenses regardless of whether it is treated as a contribution to the plan or just money which would reduce the amount necessary to be withdrawn from the farming operation for his living expenses. The debt to the Anderson State Bank is apparently for a car owned by a relative who intends to keep the car. The assistance the Debtors are receiving from Mr. Stegall's brother is a contribution in the future which is uncertain as it will only generate funds for the plan if there is a profitable year in 1986 and thereafter. The amount of that contribution is unknown. The important point is that it is a future contribution, not a present one. As recognized in *In re Pecht, supra:*

> A contribution of new value is a condition precedent to confirmation by "cram down" over a dissenting superior class unless that class is paid in full, and allowing the proprietorship to continue operating without a contribution of new value up front would, as in *Marston* (13 B.R. 788 [514] [Bkrtcy.W.D.Mo.1981]),

violate the spirit, if not the letter of Sec. 1129(b)(2)(B)(ii).

57 B.R. at 140.

■ We recognize that a divided Eighth Circuit recently held that a debtor's promise to contribute his "experience, knowledge, and labor" to a Plan would allow the debtor to retain his equitable ownership interest in a farming operation. *In re Ahlers*, 794 F.2d 388, 404–05 (8th Cir.1986). This Court agrees with Judge Gibson, the dissenting judge, who characterized the majority's view of the absolute priority rule as "contrary to precedent, logic and fairness." *In re Ahlers, supra,* 794 F.2d at 405.

, *Ahlers* is the first and only case ever to hold that the promise of future labor is an adequate substitute for a new capital contribution. Every case cited by the majority involved a capital contribution, not the promise of labor. In support of its holding, the majority relies on dicta in *Case v. Los Angeles Lumber Products Co.*, 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110 (1939), where the Court stated that a "stockholder's participation must be based on money or money's worth." *Id.* 308 U.S. at 122, 60 S.Ct. at 10. The majority then equates the farmer's labor with "money or money's worth." *Case* does not support this conclusion. *Case* involved the offer of corporation shareholders to make immediate and substantial contributions of new and needed capital. It did not involve the promise of future labor, skill or expertise. Moreover, *Case* makes it clear that non-capital contributions are not sufficient to retain equity participation in a reorganization plan:

> [F]inancial standing and influence in the community "and ... continuity of management" constitute no legal justification for issuance of new stock to them. Such items are illustrative of a host of intangibles which, if recognized as adequate consideration for issuance of stock to valueless junior interests, would serve as easy evasions of the principle of abso lute priority of *Northern Pactific [Pacific] Ry. Co. v. Boyd*, supra, [228 U.S. 482,

33 S.Ct. 554, 57 L.Ed. 931] and related cases. Such items ... are not adequate consideration for issuance of the stock in question ... They have no place in the asset column of the balance sheet of the new company. They reflect merely vague hopes of possibilities. As such, they cannot be the basis for issuance of stock to otherwise valueless interests. The rigorous standards of the absolute priority or full priority doctrine of the *Boyd* case will not permit valueless junior interests to perpetrate their position in an enterprise on such ephemeral grounds.

*Id.* at 122–23, 60 S.Ct. at 10–11. Clearly, the promise of future labor contributions "reflect merely vague hopes or possibilities", and a new capital contribution may not be based on "such ephemeral grounds."

The Court believes that the logic of Judge Gibson's cogently stated dissent should have prevailed, to-wit:

First, capital, not labor, is the means of exchange in our economy. Labor cannot easily be turned to another use; it is not liquid. Therefore, a contribution of labor does not provide the same certain protection to the unsecured creditor as does one of capital. Second, while the value of capital is fixed, the value of a farmer's experience, knowledge, and labor to a failing farm, like the value of "financial standing and influence in the community," *Los Angeles Lumber*, 308 U.S. [106] at 122, [60 S.Ct. 1 at 10, 84 L.Ed. 110], is a matter of grave speculation, again injecting uncertainty into the bargain. Finally, the capital contribution is executed prior to plan approval. Here, it is only upon the promise of future contributions of labor that creditors must rely for protection.

*Ahlers, supra,* 794 F.2d at 409.

The application of the majority opinion could operate unfairly because it would permit an individual farmer in Chapter 11 to obtain better treatment than a similarly situated corporate debtor in Chapter 11. A corporation debtor would have to cancel its existing equity interest at the outset in order to establish a new equity interest. Meanwhile, the individual farmer would be allowed to use his promise of future labor, without an initial capital contribution to retain his proprietary interest in the estate. This would violate the clear language of § 1129(b)(2)(B)(ii). *See, In re Pecht, supra,* 57 B.R. at 141.

We understand the motivation behind the majority opinion in *Ahlers.* Farm bankruptcies are in a state of crisis and we, too, sympathize with the plight of the American farmer. Nevertheless, the solution proposed by the *Ahlers* majority is contrary to the Bankruptcy Code and a long line of case law. If any changes are to be made, Congress, not the courts, should make the changes.

As with many agricultural bankruptcies, the debtors' equity interest in the reorganized estate may have a negative value since their debt exceeds the present value of the property. Nevertheless, the fact that an interest may be worthless does not mean that there is no value or property retained. The mere control of a reorganized asset is a valuable asset. *In re Pecht,* 53 B.R. 768, 772 (Bkrtcy.E.D.Va. 1985). Moreover, Section 1129(b)(2)(B)(ii) is not limited to valuable, substantial, or positive value property; it simply speaks of "any property". Therefore, the value of the interest retained is not an issue. *In re East, supra,* 57 B.R. at 18.

The *East* court further stated that it was skeptical of any claims of a debtor that his retained interest has negative value. The court reasoned that a financially rational debtor would not dedicate future earnings to pay the Plan's obligations in order to keep allegedly worthless property. 57 B.R. at 18. While this assumption may be true in most business bankruptcies, it does not necessarily hold true in the context of agricultural bankruptcies. As recently recognized in *In re Witt,* 60 B.R. 556 (Bkrtcy.N. D.Ia.1986):

A desire to remain on the family farm, to till the soil, and to continue with a way of life is the reason that most farmers wish to reorganize. Except for some limited exceptions, most farm operations have no ongoing concern value above a liquidation value, once adjusted for liquidation expenses.

60 B.R. at 560.

We agree with the *Witt* court's observation that the absolute priority rule is not appropriate in agricultural bankruptcies and that it makes agricultural reorganizations extremely difficult. 60 F.Supp. at 560. Nevertheless, although the absolute priority rule is especially harsh when it is applied to an individual farmer under the existing farm crisis, it is still the law. The Bankruptcy Code does not provide an exception for farmers. Moreover, the exception created for farmers by *Ahlers* is, in the Court's opinion, contrary to the clear weight of authority applying the absolute priority rule to individuals and farmers. *In re Witt, supra,* 60 B.R. at 560 (farmer); *In re East, supra,* 57 B.R. at 17 (individual); *In re Pecht, supra,* 53 B.R. at 772 (sole proprietorship); *In re Knutson,* 40 B.R. 142, 144 (Bkrtcy.W.D.Wis.1984) (dairy farmer).

The foregoing analysis leads one to ask "Why would a farmer wish to be in Chapter 11 if he cannot retain an interest in the farm?" The simple answer is that he would not, and the Court must assume that if the debtor cannot retain this interest, there is no purpose in allowing the debtor further time to amend his Plan.

In conclusion, the Court finds that the Plan does not meet the requirements of the cram down provisions of § 1129(b)(2)(B)(ii). Therefore, the Plan may not be confirmed over the objection of the unsecured class of claims.

This Opinion is to serve as Findings of Fact and Conclusions of Law poursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.