HARLINGTON WOOD, Jr., Circuit Judge.
 

 In this case a class of unsecured creditors of the debtor Potter Material Service, Inc. challenge the reorganization plan of the debtor. The district court affirmed the bankruptcy judge’s decision to confirm the debtor’s plan under 11 U.S.C. § 1129(b), the “cramdown” provision of the Bankruptcy Code, over the dissent of the unsecured creditors who under the plan stand to receive an amount equal to 3% of their claims. Because the bankruptcy court’s determination that Potter’s Second Amended Plan was “fair and equitable” as required by section 1129(b) is supported by the record and not clearly erroneous or based upon an error of law, we affirm the district court’s decision to affirm the bankruptcy court’s confirmation of Potter’s Second Amended Plan.
 

 I.
 

 Potter Material Service, Inc. (“Potter”), the debtor in this case, is a closely held corporation engaged in the business of purchasing, reselling, and manufacturing building supplies and materials. Since 1976, Norman B. Ochstein has been the sole shareholder, chief operating officer, and president of Potter. For various reasons, since 1978 Potter has suffered a number of financial setbacks. On June 4, 1982, Potter filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101,
 
 et seq.
 
 Potter has continued to operate its business as a debtor-in-possession.
 

 Potter has filed several plans of reorganization. This appeal involves the Second Amended Plan of Reorganization (“Second Amended Plan”) filed on February 8, 1984. The Second Amended Plan includes a reduction in the payout to the Class 8 Unsecured Creditors from 40% of their allowed claims to 3%. The plan also provides that Ochstein, the sole shareholder, will contribute the new capital necessary to fund the plan. The Class A shares which Ochstein currently holds will be cancelled and Potter will issue new Class B shares to Ochstein. In consideration for the Class B shares, Ochstein will (1) contribute $14,800 to fund the 3% payment to the Class 8 Unsecured Creditors, (2) pay the allowed compensation to Potter’s attorneys (estimated at $20,000), and (3) renew his personal guarantee of Potter’s repayment of $600,000 to Merchants National Bank & Trust Company (“Merchants Bank”).
 

 Anticipating the Class 8 Unsecured Creditors’ opposition to the Second Amended Plan, on February 21, 1984, Potter filed an application to invoke section 1129(b)(1), the “cram-down” section of the Bankruptcy Code, 11 U.S.C. § 1129(b)(1), and confirm the plan over the unsecured creditors’ objection. On March 30, 1984, the bankruptcy court issued a memorandum and order finding that Potter’s Second Amended Plan met the requirements of section 1129(b)(1) and confirming the plan. The Official Creditors’ Committee on behalf of Class 8 Unsecured Creditors (“Unsecured Creditors’ Class”) sought review in the district court. On November 8, 1984, the district
 
 *101
 
 court affirmed the bankruptcy court s confirmation decision.
 
 [1]
 

 II.
 

 Potter’s Second Amended Plan, in order to be confirmed under section 1129(b)(1), must satisfy the requirements of 11 U.S.C. § 1129(b)(2)(B)(ii).
 
 [2]
 
 Subsection (ii), which is often characterized as an “absolute-priority” rule, does not allow Ochstein, as a junior claimholder, to receive or retain anything on account of his claim
 
 (i.e.,
 
 stock in Potter) since the members of the Unsecured Creditors’ Class received less than full value on their priority claims. The courts have recognized an exception, however, to this “absolute-priority” rule. An equity-interest owner may retain an interest in the debtor corporation so long as the owner invests new capital into the corporation.
 
 See Case v. Los Angeles Lumber Products Co., Ltd.,
 
 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110 (1939);
 
 In re Landau Boat Co.,
 
 13 B.R. 788 (Bankr.W.D.Mo.1981);
 
 In re Marston Enterprises,
 
 13 B.R. 514 (Bankr.E.D.N.Y.1981). The new capital investment must (1) represent a substantial contribution and (2) equal or exceed the value of the retained interest in the corporation.
 
 See Case,
 
 308 U.S. at 121, 60 S.Ct. at 10;
 
 Landau Boat,
 
 13 B.R. at 792-93;
 
 Marston Enterprises,
 
 13 B.R. at 518. The sole issue in this case is whether Ochstein comes within this exception to the “absolute-priority” rule in section 1129(b)(2).
 

 The Unsecured Creditors Class raises two principal objections to Potter’s Second Amended Plan: that the plan is not “fair and equitable,”
 
 see
 
 11 U.S.C. § 1129(b)(2) (standard for “cram-down” reorganization), and that the sole equity holder of Potter
 
 (i.e.,
 
 Ochstein) is retaining and receiving an interest in Potter. Both the bankruptcy court and the district court rejected these objections and confirmed Potter’s Second Amended Plan.
 

 The Unsecured Creditors’ Class maintains that in order for the prior shareholder to become a new investor in the debtor, the shareholder must prove (1) that the new capital contribution is necessary, (2) that the prior shareholder is the most feasible source of the new capital, and (3) that the capital contribution is new and substantial. The Unsecured Creditors’ Class contends that the courts below erred in not making a finding on the first two points, and that the courts’ finding on the latter point was clearly erroneous.
 

 The Unsecured Creditors’ Class bases its contention that the courts below erred in not making a finding regarding necessity or feasibility upon a misconception of the proper standard courts must use in deciding whether to “cram down” a reorganization plan. The appropriate test is the one Congress wrote into the Bankruptcy Code in section 1129(b)(2) — whether the plan is “fair and equitable.” Necessity and feasibility are but two of numerous con
 
 *102
 
 cepts subsumed under the “fair and equitable” standard. The cases cited by the Unsecured Creditors’ Class,
 
 see, e.g., Mar-ston Enterprises,
 
 13 B.R. at 517 (new investment must be necessary);
 
 In re Jar-tran, Inc.,
 
 44 B.R. 331, 379 (Bankr.N.D.Ill. 1984) (necessary and most feasible source), do not stand for the proposition that the court, in order to confirm the plan, must make specific findings that the new capital is necessary, that the shareholder is the most feasible source, and so forth. Rather, if the creditors challenge a plan as not “fair and equitable”
 
 because
 
 the new capital is not necessary or the shareholder is not the most feasible source, then the court must make such a finding. Absent a challenge by the creditors on such a point, the court cannot be expected to examine
 
 sua sponte
 
 and issue a finding for every potential subcomponent of the “fair and equitable” standard. Once the court examines the specific challenges raised by the creditors and finds the plan “fair and equitable,” the court has not duty to anticipate and rule upon factual issues which the creditors have not raised.
 

 In this case, the Unsecured Creditors’ Class did not raise the necessity and feasibility issues below. Those issues are thus not grounds for attacking the plan. Nevertheless, the record contains a sufficient basis for affirming the plan’s confirmation on those grounds. A finding that the new capital contribution is necessary is implicit in the bankruptcy court’s finding that the plan was “fair and equitable.” Furthermore, the Unsecured Creditors’ Class presented no evidence of a more feasible source for the new capital and submitted no plan of its own that might have demonstrated an alternative approach-. Therefore, the necessity and feasibility issues present no grounds for upsetting the confirmation of Potter’s Second Amended Plan.
 

 The Unsecured Creditors’ Class also contends that Ochstein’s capital contribution is not new and substantial and, in a related argument, that Ochstein is retaining and receiving an interest in the debtor. Both arguments go essentially to the same point,
 
 ie.,
 
 whether Ochstein’s contribution exceeded the interest he received, so we will consider them together. Because both courts below considered and rejected these arguments, the Unsecured Creditors’ Class has a heavy burden to meet in convincing this court to reverse the decision reached by both courts below.
 

 The district court found that Ochstein’s investment of new capital was substantial and greater than the value of the interest he received in Potter
 
 {ie.,
 
 the “going-concern” value of Potter). The court based this finding upon Ochstein’s contribution of $14,800 to fund the Second Amended Plan, Ochstein’s commitment to pay Potter’s attorneys’ fees (approximately $20,000), and Oehstein’s renewed personal guarantee of Potter’s $600,000 debt to Merchants Bank. The court considered evidence of Potter’s past earnings record, the state of the economy, the highly competitive nature of Potter’s business, the current financial position of Potter, and projections of Potter’s future earnings. The court concluded that Potter had a “going-concern” value of approximately $10,000 to $15,000.
 

 The Unsecured Creditors’ Class argues that Ochstein’s contribution was not new capital, but rather came from funds that Ochstein withdrew from Potter allegedly to pay off part of a previously made officer’s loan to Potter. The class contends that the court failed to require satisfactory proof that Ochstein’s capital contribution could be traced to sources independent of Potter. Ochstein testified,, however, that he would make the contribution from his own funds, and the bankruptcy judge apparently believed him. The record therefore contains sufficient support for the bankruptcy judge’s finding that the contribution was new, so the finding was not erroneous.
 

 The Unsecured Creditors’ Class argues next that Ochstein’s renewal of his personal guarantee of Potter’s $600,000 debt to Merchants Bank was not new or substantial consideration. The class argues that: Ochstein was already personally liable for the debt; the bank promised no new capital
 
 *103
 
 contribution to Potter; the debt was already oversecured by $98,000; and Och-stein failed to present evidence that he had personal assets which the bank could apply against the guarantee. Ochstein testified that although the debt would be covered if Potter were liquidated now, in the future the assets of Potter might not cover the loan. David Hamernik, a senior partner with the accounting firm of Ernst & Whin-ney, testified that Ochstein’s act of re-executing the guarantee was risky and probably not a prudent thing to do.
 

 The bankruptcy court found, and district court affirmed, that Ochstein’s renewal of the personal guarantee was an economic risk of indeterminable value and thus consideration toward the purchase of Potter’s stock. The record contains sufficient evidence to support the courts below on this issue; therefore the finding that Ochstein assumed an economic risk in renewing the personal guarantee is not erroneous.
 

 The Unsecured Creditors’ Class argues that the courts below erred by placing too low a value on the interest that Ochstein received in Potter. The bankruptcy court found, and the district court affirmed, that Potter had a going-concern value of $10,-000 to $15,000. The class’s experts placed the value of Potter at between $50,000 and $100,000 with projected increases in value each year. The courts below found these estimations and projections overly optimistic, however, because they failed to take into account negative factors such as Potter’s negative earnings history and the volatile and competitive nature of Potter’s business. This finding was not erroneous.
 

 The Unsecured Creditors’ Class maintains that the courts below erred in failing to consider either potential tax benefits to Ochstein or the value to Ochstein of exclusive control of Potter. Our search of the record indicates, however, that the class failed to provide the court with evidence of what value Ochstein received from any tax or control considerations. To the extent that the creditors did present these issues of fact to the bankruptcy judge in a general way, it was not erroneous for the judge to find that the creditors did not establish that Ochstein received anything of value.
 
 [3]
 

 Finally, the Unsecured Creditors’ Class argues that the district court erred in accepting a going-concern value for Potter that substantially understated the real value that Ochstein received. In particular, the creditors contend that the court erred in relying too heavily on the recent financial problems of Potter and giving virtually no weight to Potter’s future projections which Ochstein supplied to support the feasibility of the Second Amended Plan.
 

 The Supreme Court set out the appropriate standard for evaluating a company undergoing reorganization in
 
 Consolidated Rock Products Co. v. Du Bois,
 
 312 U.S. 510, 61 S.Ct. 675, 85 L.Ed. 982 (1941). The Court said:
 

 
 *104
 
 The criterion of earning capacity is the essential one if the enterprise is to be freed from the heavy hand of past errors, miscalculations or disaster, and if the allocation of securities among the various claimants is to be fair and equitable. Since its application requires a prediction as to what will occur in the future, an estimate, as distinguished from mathematical certitude, is all that can be made. But that estimate must be based on
 
 an informed judgment which embraces all facts relevant to future earning capacity and hence to present worth,
 
 including, of course, the nature and condition of the properties, the past earnings record, and all circumstances which indicate whether or not that record is a reliable criterion of future performance. A sum of values based on physical factors and assigned to separate units of the property without regard to the earning capacity of the whole enterprise is plainly inadequate_ The Circuit Court of Appeals correctly left the matter of a formal appraisal to the discretion of the District Court.
 
 The extent and method of inquiry necessary for a valuation based on earning capacity are necessarily dependent on the facts of each case.
 

 Id.
 
 at 526-27, 61 S.Ct. at 685 (citations omitted) (emphasis added).
 

 The district court correctly made an informed judgment after looking at all the relevant facts in this case. The court based its valuation of Potter upon “the Debtor’s past earnings record, the state of the economy, the highly competitive nature of the Debtor’s business, the present financial position of the Debtor and the Debtor’s projections of future earnings.” The valuation of a corporate debtor is a complex task, requiring an evaluation of considerable data concerning the past, present, and future operations of the debtor. Unless - the creditors challenging a “cram-down” reorganization can show that the court below made an erroneous valuation, this court will not reweigh the evidence on appeal. The Unsecured Creditors’ Class has failed to demonstrate that the value placed on Potter by the courts below was erroneous. We affirm the district court’s decision.
 

 III.
 

 The Unsecured Creditors’ Class appeals the decision of the district court to affirm the bankruptcy judge’s confirmation of Potter’s Second Amended Plan of Reorganization. The appellant contends that the plan will allow Ochstein, the sole shareholder of Potter, to retain or receive an interest in Potter greater than Ochstein’s contribution of new capital to Potter. The appellant is unable, however, to show that the district court’s decision was erroneous. The decision of the district court is Affirmed.
 

 [1]
 

 . The district court had jurisdiction to review the bankruptcy court’s decision under 28 U.S.C. § 158. This statute, passed as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984,
 
 see
 
 Pub.L. No. 98-353, § 104(a), 98 Stat. 333 (1984), came into effect on July 10, 1984. The district court, in its opinion issued November 8, 1984, applied the standard of review set out in Rule 8013 of the Rules of Bankruptcy Procedure, which provides that
 

 [o]n an appeal the district court ... may affirm, modify, or reverse a bankruptcy court’s judgment, order, or decree or remand with instructions for further proceedings. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.
 

 [2]
 

 . Section 1129(b)(2) provides:
 

 (2) For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:
 

 (B) With respect to a class of unsecured claims—
 

 (i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or
 

 (ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain on account of such junior claim or interest any property.
 

 [3]
 

 . The Unsecured Creditors' Class also argues that Ochstein received something of value from the plan because he "received” an exclusive right to buy the new Potter stock. As we noted above, the case law under § 1129(b)(2)(B) allows prior shareholders to invest in the reorganized debtor, so long as the shareholders make a capital contribution equal or greater than their interest in the debtor.
 
 See Case v. Los Angeles Lumber Products Co., Ltd.,
 
 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110 (1939) (interpreting absolute-priority rule under Old Bankruptcy Act);
 
 Kansas City Terminal Railway Co. v. Central Union Trust Co.,
 
 271 U.S. 445, 46 S.Ct. 549, 70 L.Ed. 1028 (1926) (interpreting absolute-priority rule under old Bankruptcy Act).
 

 Once again, we must point out that the creditors class failed either to present the bankruptcy judge with evidence of the value, if any, that Ochstein received from this right, or to present a reorganization plan providing the creditors with an opportunity to participate in the new stock. The creditors’ class chose, in the courts below, to focus its efforts on convincing the court to accept its estimates of the value of Ochstein’s contribution and the value of the interest that Ochstein received in Potter. Having relied upon that strategy below, the creditors’ class cannot now on appeal raise a variety of new challenges alleging that the court below erred by failing to make findings on factual issues the class never raised or by failing to give value to factors on which the class presented no evidence of value. If the Unsecured Creditors’ Class believed these issues significant, it should have raised them below and given the bankruptcy and district courts an opportunity to consider them.