In re Ronald L. PECHT, t/a Pecht's Firewood, a proprietorship, Debtor.

Bankruptcy No. 84–00895–R.

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Jan. 10, 1986.

James R. Sheeran, Richmond, Va., for debtor.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter again comes before the Court on a hearing pursuant to 11 U.S.C. § 1125(b) to approve an amended disclosure statement of the debtor, Ronald L. Pecht. There was a previous hearing on September 20, 1985 to approve a disclosure statement, which statement this Court declined to approve by its Memorandum Opinion and Order of October 8, 1985, 53 B.R. 768. The issues before the Court are (1) whether the change in the debtor's plan and disclosure statement were so insignificant that any further order of this Court on the particular issue would be barred by the doctrine of *res judicata* and (2) if not, should the alteration in the debtor's disclosure and plan be such that this Court could make a finding contrary to that of its prior opinion and order.

## STATEMENT OF THE CASE

The debtor, Ronald L. Pecht ("Pecht"), after the Court's order of October 8, 1985, to which no timely appeal or motion to vacate was filed, did file a first modified plan and first amended disclosure statement together with a memorandum in support of approval of the first amended disclosure statement.

This Court in its prior opinion made a finding that the plan could not be confirmed because the debtor retained an interest in the property of the debtor in possession while providing for no payment or dividend to both the unsecured creditors in class six and the creditors in classes three and four to the extent they were unsecured. The failure to provide is deemed a negative vote of that class. 11 U.S.C. § 1126(g). This Court made the determination that due to the non-acceptance by a class the plan could not be confirmed because the debtor would be retaining its proprietary interest in the business in violation of § 1129(b)(2)(B)(ii). The first disclosure statement in the paragraph titled Description of Plan of Reorganization contains the following:

Pecht's primary asset lies in its ability to generate income from operations.

Accordingly, the Plan provides that the (sic) Pecht will continue operations, and that *future income generated from operations will be applied* to the payment of claims against Pecht, which will be satisfied in accordance with the terms of the Plan. (Emphasis added.)

The disclosure also contains a paragraph entitled Means of Execution which states as follows, "Pecht will retain all his property and continue to operate his firewood business alone."

The amended disclosure plan in its paragraph entitled Description of Plan of Reorganization contains the following language:

Pecht's strength is his ability, as an individual, to generate earnings from the services he has performed after the commencement of this case and which he will continue to perform. These earnings are not property of his bankruptcy estate because he is an individual, and not a partnership or corporation. 11 U.S.C. § 541(a)(6).

Accordingly, the Plan will be funded by the means hereinafter described, and *Pecht's earnings from services performed and to be performed post-petition will be contributed to the estate for application to the payment of claims against the estate,* which will be satisfied in accordance with the terms of the Plan.

The total contribution Pecht will make from his future earnings is not less than $57,347.65. The total contribution can only be estimated because the unpaid unsecured priority claim of the IRS bears compounded interest after confirmation at a variable rate. The above amount assumes an 11% rate of daily compounded interest, the current rate, will be in effect throughout the life of the Plan. A table analyzing the payment of the IRS' unsecured priority claim in relation to Pecht's Plan is contained in Appendix Three.

Of the total contribution, $17,326.56 will be applied to debts that remain secured by property Pecht owned at the time his petition was filed. The balance, an estimated $40,021.09, will be applied to the payment of unsecured claims in their order of priority. To the extent of this latter amount, Pecht will be giving new value to his bankruptcy estate.

According to the terms of the Plan, Pecht's payments to his various creditors under its terms either on or within the first month after confirmation will be $8,865.08. As indicated above, as of September 27, 1985, he had set aside from his post petition earnings the sum of $7,459.90 for that purpose. (Emphasis added.)

The paragraph titled Means of Execution contains the following:

Pecht will fund this plan of reorganization with earnings he has generated and will in the future generate from services performed and to be performed after the commencement of the case. Pecht will contribute to the estate the sum of $57,-347.65 from his earnings for services performed and to be performed post-petition will (sic) for application to the payment of claims against the estate, which will be satisfied in accordance with the terms of the Plan.

In consideration of the contributions of new income to the plan, Pecht will retain all the property of the estate that has not been otherwise claimed exempt under applicable bankruptcy and nonbankruptcy law.

■ The debtor has argued that the amended disclosure statement provides for an infusion of capital which had not been provided for in the original disclosure statement. That argument is specious. It is the mere nature of the sole proprietorship that you have what you have, i.e., the debtor's interest in the sole proprietorship is absolute, and the debtor's contribution under the first plan is the same as his contribution under the second plan, only stated with greater specificity. This Court can find no material difference between the two plans or disclosure statements. Having previously ruled that the first plan was nonconfirmable as a matter of law, it appears that the doctrine of *res judicata* precludes further consideration of the disclosure statement presently before the Court.

Pecht has argued that consideration of the merits of his plan of reorganization at a hearing on approval of his disclosure statement under 11 U.S.C. § 1125(b) is impermissible as a violation of due process. This issue was fully discussed in the Court's prior opinion, and, again, Pecht chose not to appeal or seek a vacation of that order.

■ Section 1125(b) of the Code gives the Court the authority to decline approval of a disclosure statement if it does not give "adequate information" to the entities that will have to vote on the plan. If, on the face of the plan, the plan could not be confirmed, then the Court will not subject the estate to the expense of soliciting votes and seeking confirmation. Not only would allowing a nonconfirmable plan to accompany a disclosure statement, and be summarized therein, constitute inadequate information, it would be misleading and it would be a needless expense to the estate.

■ If the Court can determine from a reading of the plan that it does not comply with § 1129 of the Bankruptcy Code, then it is incumbent upon the Court to decline approval of the disclosure statement and prevent diminution of the estate. Although a debtor may not be required at the hearing on the disclosure statement to show that the plan conforms to all the requirements mandated by § 1129, should the contents of the disclosure or the plan reflect an inability to comply with those requirements, the Court may decline approval of the disclosure statement. The authority of the Court to deny approval of the disclosure statement when it mirrors a nonconfirmable plan was fully delineated in this Court's previous opinion and it need not be repeated here.

The other issue before the Court arises only should there be a finding that *res judicata* or any other equitable estoppel doctrine does not apply. The problem arises out of an allusion in this Court's previous opinion to the possibility of confirmation of the debtor's plan of reorganization if the plan provides for an infusion of capital by the debtor or a third party to accommodate Pecht's unsecured creditors, i.e., the non-accepting class. The debtor's amendment to the plan makes no change in the distribution provided in the plan.

Pecht's only change is an elaboration on the means of funding the plan by showing a contribution of "substantial" equity by Pecht, the present equity holder, through post-petition earnings of the debtor, and a portion of which, if any, not needed for Pecht's welfare would be reinvested as "new value" in the business. Pursuant to 11 U.S.C. § 541(a)(6), earnings from services performed by an individual debtor after the commencement of the case are not property of the estate, but instead remain property of the individual. Pecht's basic assertion is that whatever income Pecht's Firewood earns in the post-petition setting does not inure to the estate, but rather to Pecht himself, and a portion of the excess over his personal living expenses will be characterized as "new value" and used to fund payment of his priority debts. Through this process Pecht proposes to wipe out his unsecured creditors and retain his equity interest.

Pecht has cited *In re Marston Enterprises, Inc.*, 13 B.R. 514 (Bankr.E.D.N.Y. 1981), *In re Landau Boat Company*, 13 B.R. 788 (Bankr.W.D.Mo.1981), and *In re U.S. Truck Company*, 47 B.R. 932 (D.C.E. D.Mi.1985) for the proposition that a class of interests junior to the class of creditors being crammed down may receive or retain property or an interest in the debtor if such class makes a new contribution of substantial value to the estate. However, Pecht does not propose to pay such new value at confirmation or on the effective date of the plan, but instead he provides for payment, if ever, over the life of the plan. The

authority Pecht cites does not support such a means of contributing new value.

In *In re Marston Enterprises, Inc., supra,* the original stock issued to the existing equity security holders was to be cancelled, and the existing stockholders were to contribute between $300,000 to $400,000 to fund the plan. *Marston,* 13 B.R. at 517. The court also held that if mortgage financing were available to fund the plan, allowing the shareholders of the debtor corporation to furnish such an investment would be contrary to the spirit, if not the letter, of § 1129(b)(2)(B)(ii). *Id.* As such financing was not available, the substantial equity contribution up front, not through funding down the road, provided a fixed and certain amount of new value to the reorganized entity. *In re U.S. Truck Company, supra,* followed *Marston* and established a similar arrangement.

*In re Landau Boat Company,* 13 B.R. 788 (Bankr.W.D.Mo.1981) also provided for funding similar to that in *Marston.* In *Landau,* the unsecured creditors did not accept the original plan, and in order to effectuate cram-down, the existing stockholders' equity interests were cancelled and through the purchase of new shares, and an irrevocable loan commitment of $3.00 per new share purchased, the requisite "new value" was provided to fund the company's Chapter 11 plan.

Pecht proposes no funding up front which would constitute a contribution of new value. A contribution of new value is a condition precedent to confirmation by "cram down" over a dissenting superior class unless that class is paid in full, and allowing the proprietorship to continue operating without a contribution of new value up front would, as in *Marston,* violate the spirit, if not the letter of § 1129(b)(2)(B)(ii).

As noted previously, Pecht intends to contribute new value because of an accumulation of funds arising out of his post-petition receipts from the business, contending that the income is excepted as an asset of the estate under 11 U.S.C. § 541(a)(6). Pecht's reasoning contem-

plates that the entire income of the proprietorship would provide income which would potentially be new value to the estate. However, § 541(a)(6) only excepts from the estate the value of services personally performed by the debtor, and to the extent the proprietorship's earnings are attributable not to Pecht's personal services, but to business invested capital, accounts receivable, good will, employment contracts, work performed by employees, or the like, the earnings of the proprietorship accrue to the estate. *In re Fitzsimmons*, 725 F.2d 1208, 1211 (9th Cir.1984).

 Indeed, Pecht fails to acknowledge that the funds he will receive and not expend for his own welfare will be generated from use of the property of the estate. The use of the equipment and other estate property by the debtor in possession would subject it to depreciation, and some or all of the "income" would derive from the depreciation expense and repayment of that expense would not be a contribution of new value. Following the Ninth Circuit in *Fitzsimmons*, this Court is in accord with the principal that an individual cannot claim the value or income derived from employees of the estate or return on capital. *Fitzsimmons*, 725 F.2d at 1208.

In addition, and as stated in this Court's previous opinion, to follow the debtor's concept of "new value" would create a clearly unintended result under the Bankruptcy Code, for it would permit a sole proprietorship in Chapter 11 to obtain a much better treatment than a corporate debtor could obtain. A corporate debtor would have to cancel its existing equity interest, in essence obtaining outside contribution at the outset, and establish a new equity interest before a senior class of dissenting creditors could be required to accept less than full payment.

Under Pecht's theory, the sole proprietor would be allowed to use future income of the business, solely and without an initial contribution, to retain his proprietary interest in the nonexempt property of the estate. The intended result would be an attempt to create a new equity interest in the debtor, allowing that debtor to continue his original proprietary interest in the assets of the sole proprietorship and at the same time violate the clear statutory demands of § 1129(b)(2)(B)(ii). The analogy to this would be to allow a corporation to use only its future earnings to accomplish the same result for the benefit of its stockholders without the infusion of additional capital. That too would completely refute the absolute priority rule so well defined in § 1129(a)(2)(B)(ii).

For the foregoing reasons, the Court must decline to approve the debtor's first amended disclosure statement.

An appropriate Order will issue.