**In re H. Dean STEGALL and Sandra Lorene Stegall, Debtors–Appellants.**

No. 86–1249.

United States District Court,
C.D. Illinois.

June 29, 1987.

Barry Barash, Barash & Barash, Galesburg, Ill., for debtors-appellants.

Alan Stentz, Valerie McWilliams, Mt. Vernon, Ill., for Illinois Family Farm Legal Assistance Program.

Douglas R. Lindstrom, Galesburg, Ill., for Federal Land Bank of St. Louis.

## ORDER

MIHM, District Judge.

Presently before this Court is H. Dean Stegall's and Sandra Stegall's (hereafter Stegalls) appeal from a bankruptcy court decision denying confirmation of their Chapter 11 agriculture reorganization plan. This Court's jurisdiction is conferred by 28 U.S.C. § 158(a).

On September 12, 1985, the Stegalls, husband and wife, filed a joint voluntary petition under Chapter 11 of the Bankruptcy Code. On October 3, 1985, they filed a disclosure statement and plan of reorganization (hereafter the Plan). Five of the Stegalls' unsecured creditors accepted the Plan. However, the controlling unsecured creditor, the Federal Land Bank of St. Louis (hereafter FLB), rejected the Plan. On February 3, 1986, the Stegalls moved to confirm the Plan and cram down on dissenting creditors. The FLB filed an objection to confirmation of the Plan of reorganization.

On April 17, 1986, a confirmation hearing was conducted before the Honorable Larry Lessen, Chief U.S. Bankruptcy Judge, Central District of Illinois. On August 20, 1986, Judge Lessen issued an opinion denying confirmation of the Stegall reorganization plan, 64 B.R. 296. Judge Lessen found that the Plan did not meet the requirements of the cram down provisions set forth in 11 U.S.C. § 1129(b)(2)(B)(ii), and therefore, the Plan could not be confirmed over the objection of the unsecured creditor class. Thus, the order dismissed the Stegalls' Chapter 11 bankruptcy case. The Stegalls appealed Judge Lessen's ruling.

The Stegall Plan proposed payment of 10% of the unsecured claims through 1% distributions per year over ten years. Further, it was determined that the proposed Plan would provide the unsecured creditors with a greater recoupment of their losses than if the case was converted to a Chapter 7 liquidation, which would reap less than 1% for the unsecured creditors.

The Stegalls present three contentions on appeal: (1) the application of the absolute priority rule in agricultural reorganizations is improper; (2) if the absolute priority rule is applicable to the present case, the interest in the debtor estate which they attempt to retain is exempt from the absolute priority rule because of the negative equity of those interests; and (3) in the alternative, if the Court concludes that the absolute priority rule is applicable in this case, identified contributions satisfy the new capital contribution exception to the absolute priority rule.

## ABSOLUTE PRIORITY RULE

Section 1129 of the Bankruptcy Code sets forth the conditions which must be satisfied in order for a plan of reorganization to be confirmed. These conditions include that the plan be: presented in good faith[1], feasible[2], provide for payment in full of priority claims[3], and satisfy the best interests test[4]. Additionally, Section 1129(a)(8) requires that where there exists an impaired class, a plan can only be confirmed if the class has "accepted the plan." Section 1126(c) provides that the plan is "ac-

---

1. See, 11 U.S.C. § 1129(a)(3).

2. See, 11 U.S.C. § 1129(a)(11).

3. See, 11 U.S.C. § 1129(a)(9).

4. See, 11 U.S.C. § 1129(a)(7).

cepted" by creditors in an impaired class, if the plan receives favorable votes of one-half of the voting claimants, who hold two-thirds of the allowed claims of such a class.

In the present case, the Plan presented by the Stegalls failed to satisfy § 1129(a)(8) in that it did not receive sufficient votes from the unsecured class of creditors. Thus, the Stegalls attempt to have their plan confirmed pursuant to an exception to § 1129(a)(8). The Stegalls request confirmation over the objection of the unsecured FLB, pursuant to § 1129(b)(1).

Section 1129(b)(1) establishes a provision by which the court, on request, may confirm a plan where all of the requirements of § 1129(a) are satisfied except § 1129(a)(8). This provision is commonly referred to as "cram down." 11 U.S.C. § 1129(b)(1).

■ "Cram down" is a Chapter 11 term which refers to the process by which a proposed plan is confirmed notwithstanding the plan's rejection by a class or classes of creditors or equity security holders. Robert E. Ginsberg, *Bankruptcy* § 13601 (1985). Under the cram down provision the plan must still satisfy the non-cram down requisites of good faith, feasible, provide for payment in full of claims and satisfy the best interests test. *Id.*

Additionally, in order to confirm a plan pursuant to the cram down provision, the plan must also satisfy the requisites of 11 U.S.C. § 1129(b)(2)(B). Section 1129(b)(2)(B) provides that the plan must be fair and equitable:

"(A) With respect to a class of unsecured claims—(i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan equal to the allowed amount of such claim; or (ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain on account of such junior claim or interest any property."

The Stegalls attempted to have their Plan confirmed pursuant to § 1129(b)(2)(B)(ii). Section 1129(b)(2)(B)(ii) is commonly referred to as the absolute

priority rule. *In re Potter Material Service, Inc.*, 781 F.2d 99, 101 (7th Cir.1985); *In re East*, 57 B.R. 14, 16 (Bankr.M.D.La. 1985).

■ The absolute priority rule provides that a junior class may not receive anything in a bankruptcy reorganization, unless and until all senior classes have received full compensation. *Case v. Los Angeles Lumber Products Company*, 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110 (1939); *Northern Pacific Railway v. Boyd*, 228 U.S. 482, 33 S.Ct. 554, 57 L.Ed. 931 (1913). In other words, if an unsecured class receives less than full value on allowed amounts of their unsecured claims, the debtor, as a junior claim holder, may not receive or retain any claim or interest in any property under the plan. *In re Potter Material Service, Inc.*, 781 F.2d at 101.

The Stegalls' first contention is that the application of the absolute priority rule in agricultural reorganization is improper. They assert that the application of the absolute priority rule in an agricultural bankruptcy makes agricultural reorganization extremely difficult, if not impossible, as a result of the nature of the sole proprietorship. In support their position, the Stegalls rely on *In re Witt*, 60 B.R. 556 (Bankr.N.D.Iowa 1986).

■ The Court recognizes the rehabilitative purpose of Chapter 11 and the serious burden that the application of the absolute priority rule imposes upon a sole proprietor. However, the Stegalls' assertions that the application of the absolute priority rule to sole proprietorships should be relaxed or modified is, in this Court's determination, a request for legislation. Such is not a proper function of this Court.

The legislative history of the absolute priority rule supports the position of this Court that the requested modification of the absolute priority rule constitutes legislation, not judicial interpretation. Therefore, this Court is obligated to apply the rule in the present case.

As pointed out by the Appellee, Congress established a commission on bankruptcy

laws in 1970. In 1973 the Commission submitted its reports and findings and proposed legislation. One of the Commission's recommendations at that time was that the absolute priority rule be relaxed and modified. The modification was as follows: "By allowing shareholders to participate in their future contributions, i.e., continued management is essential to the business." See Report of the Commission of Over Bankruptcy Laws of the United States, House Document No. 93–137, 254–259. After much criticism in both the House and Senate, the bill's first draft, including the above-identified modification was withdrawn and reintroduced in 1977. The revision did not contain the above modification of the absolute priority rule.

It would appear that Congress' consideration of the exception for future contributions of labor and management was rejected, as exemplified by its enacting the present § 1129(b) as part of the 1978 Bankruptcy Code. Although this Court is sympathetic to the plight of the farmer in the 1980's, this Court follows the position of the court in the case of *In re Witt* which stated:

> "This court does not believe the absolute priority rule is appropriate in agriculture bankruptcies and realizes that it makes agricultural reorganizations extremely difficult. *Nevertheless, it is clearly the law as the Bankruptcy Code and case law indicates and if the law is to be changed, Congress must do so."* (Emphasis added). *In re Witt*, 60 B.R. 556, 560.

■ The Stegalls' second contention is that the interests that they attempt to retain are exempt from the absolute priority rule because of the negative equity of those interests. Additionally, the Stegalls argue that they wish to retain the real estate not because it is of any monetary value, but because it is a family farm. The Court finds this contention disingenuous. The Court concurs with the court in the case of *In re East*, 57 B.R. 14 (M.D.La. 1985), which held that if a debtor retains any property, including negative equity, the absolute priority rule is not satisfied.

*Id.* at 18. Thus, even if the Stegalls' contention is true, and the interest is a negative equity, the absolute priority rule is still applicable and not satisfied. Further, the court finds it very difficult to believe that 200 acres of real estate, even in light of the recent plight of the farmers, is "worthless."

## NEW CAPITAL INVESTMENT EXCEPTION

■ The courts have recognized one exception to the absolute priority rule through which an individual owner may retain an interest in the debtor estate. *In re Potter Material Service, Inc.*, 781 F.2d at 101. See, *Case v. Los Angeles Lumber Products Company*, 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110 (1939). This exception permits the owner to retain an interest in the debtor estate where he or she invests new capital into the estate. *Id.* The junior claim holder may then participate in the reorganization, but only to the extent of his or her new capital contribution. *In re Landau Boat Company*, 13 B.R. 788 (Bankr.W.D.Mo.1981).

■ The new capital investment must represent a substantial contribution that equals or exceeds the value of the retained interest in the estate. *In re Potter Material Service, Inc.*, 781 F.2d at 101. Further, the new capital investment must be a present contribution, not a contribution in the future. *In re Pecht*, 57 B.R. 137, 140–41 (Bankr.E.D.Va.1986).

In the present case, the Stegalls propose a Plan by which they retain an interest in a substantial amount of personal property and real estate, including but not limited to, farming equipment and 200.38 acres of land. In order to retain this interest in the estate property, the Stegalls, who are unable to pay their creditors in full, must satisfy the new capital investment exception to the absolute priority rule.

The Stegalls identify nine contributions, which they assert (when considered in totality) satisfy the requirements of the new capital investment exception. The most controversial contribution is their contribution of labor and services in conducting the

farming operation during the period of the Plan. In addition, they propose the following contributions: (1) the Anderson State Bank post-petition production loan in the amount of $15,000; (2) Mr. Stegall's exempt Veterans pension of $66 per month; (3) Mrs. Stegall's post-petition income as a part-time librarian; (4) Mr. Stegall's brother's (Leslie Stegall) agreement to assume the risk of loss on the England lease, to provide a low interest loan to the Stegalls, and to divide equally any profits from the England 140 acre farm; (5) the post-petition sealing profit; (6) the post-petition deficiency payments; (7) the Stegalls' daughter's assumption of her automobile loan with the Anderson State Bank; and (8) livestock purchased post-petition from Farmers and Mechanics Bank.

The Stegalls' identified contributions give rise to two issues. First, whether the Stegalls' proposed contribution of post-petition personal services to the reorganized farm enterprise constitutes new capital. Second, whether the contributions proposed by the Stegalls satisfy the new capital contribution exception to the absolute priority rule.

The bankruptcy court in this case made express findings of fact regarding what constitutes new capital contributions. The bankruptcy court found that the Stegalls' identified contributions did not constitute new capital, for they did not satisfy the case precedent requirement of objective, tangible forms of new capital, *contributed up front*.

In reviewing the decision of the bankruptcy court, the district court is bound by the clearly erroneous standard. *In re Browns Industrial Uniforms*, 58 B.R. 139 (N.D.Ill.1985). The standard provides that the district court must accept the bankruptcy court's findings of fact, unless they are clearly erroneous. *Id.*

First, the Stegalls' contend that their contribution of labor and services in conducting the farming operation constitutes new capital. The Court disagrees with the Stegalls' contention.

A review of the case law reflects that the courts require that any contribution of new captial must be made "up front," and not in the form of future payments. *In re Potter Material Service, Inc.*, 781 F.2d 99 (7th Cir.1986), a recent United States Court of Appeals Seventh Circuit decision, the court confirmed the debtor's plan of reorganization, where the debtor's plan provided for substantial up front contributions of new capital. *Id.* In *Potter*, the court found that the investment of new capital in the debtor was greater than the value of the interest being retained. *Id.* at 102. The existing shareholders were to contribute $14,800 to fund a 3% payout to the unsecured creditors. *Id.* Additionally, the stockholders were going to pay the allowed compensation of the debtor's attorney in the amount of $20,000, and the shareholders were going to renew a personal guarantee for the debtor in the amount of $600,000. *Id.* As the court required in *Potter* and in most of the cases in which the courts have confirmed reorganization plans, substantial up front contributions versus future contributions are provided for in the reorganization plan.

Similarly, in *In re Marston Enterprises, Inc.*, 13 B.R. 514 (Bankr.E.D.N.Y.1981), the original stock issued to the existing equity security holders was to be cancelled, and the existing stockholders were to contribute between $300,000 and $400,000 to fund the plan. *In re Marston*, 13 B.R. 514, 515 (Bankr.E.D.N.Y.1981). The court noted that the substantial equity contribution up front provided a fixed and certain amount of new value to the reorganized company. As a result, the court confirmed the plan. *Id.* at 521.

In the case of *In re Pecht*, 57 B.R. 137 (Bankr.E.D.Va.1986), the debtor proposed a plan to the court which provided that the debtor would continue operations and apply "future income generated from operations" to payment of the claims. *In re Pecht*, 57 B.R. 137 (Bankr.E.D.Va.1986). His plan set out that "Pecht's earnings from services performed and to be performed post petition were to be contributed to the estate for the application to the payment of claims against the estate...." *Id.* at 138.

Although the court held the plan to be non-confirmable as a matter of law based on res judicata, the court in dictum observed: "Pecht proposes no funding up front which would constitute a contribution of new value...." *Id.* at 140. Further, the court asserted that a contribution of new value, "is a condition precedent to confirmation by cram down over a dissenting superior class, unless that class is paid in full. *Id.* Allowing the proprietorship to continue without a contribution of value *up front* would, as in *Marston,* violate the spirit, if not the letter, of § 1129(b)(2)(B)(ii)." *Id.*

The Stegalls' contribution of service and labor could not possibly be injected into the reorganization "up front." It is without question that such a contribution would have to be made over the life of the Plan. As the courts have noted, the purpose of the injection of new capital is an effort to continue the working of and generating income from the operation, in this case a farm, in order to pay all the outstanding claims of the debtors. However, the Court's reasonable concern is the security of the creditors in the event that such a continued effort to operate fails. Thus, courts have required that the up front contribution be money or its reasonable worth, which is liquidable by the creditors in the event of rehabilitation failure.

As pointed out by the Appellees in this case, unlike promises of up front contributions, promises of management, labor, or skill, are future contributions, which are not liquidable or enforceable. The Thirteenth Amendment itself prohibits enforcement of such promises. *Karrick v. Hannaman,* 168 U.S. 328, 335–36, 18 S.Ct. 135, 138, 42 L.Ed. 484 (1897). Thus, a future contribution of management, labor, or skill is of little or no value to the creditor.

The strength of Appellant's argument is derived from the Eighth Circuit holding in *In re Ahlers,* 794 F.2d 388 (8th Cir.1976), motion for rehearing en banc denied, 794 F.2d at 414 (8th Cir.1986), appeal pending, United States Supreme Court. The Stegalls request that this Court adopt and follow this holding in the present case.

The *Ahlers* case is the first and only court to hold that a defendant's promise to contribute their "experience, knowledge, and labor" is an adequate substitute for substantial new capital contribution to a Plan. The effect of the holding is to allow a debtor to retain its equitable ownership interest in its farming operation. *Ahlers,* 794 F.2d 388, 404–5 (8th Cir.1986).

The Ahlers were farmers who filed for bankruptcy pursuant to Chapter 11, on November 30, 1984. They proposed a reorganization plan and sought confirmation. The unsecured creditors rejected the plan and took the position that they would reject every plan that did not provide for payment in full of their claims.

In the court's opinion, it took the position that "the Supreme Court specifically recognized that there may be circumstances in which the absolute priority rule could be modified to allow a junior ownership interest to participate in the reorganization plan, even though the dissenting senior creditors may receive less than their allowed claims." *Ahlers,* 794 F.2d at 403. Pursuant to this position, the court stated:

"Certainly, a farmer's efforts in operating and managing his farm is essential to any successful farm reorganization, and this yearly contribution is measurable in money or money's worth. Moreover, the reorganization value of the Ahlers' farm exceeds its liquidation value—if the plan is rejected, the unsecured creditors will get nothing, whereas they will receive annual payments if the plan is approved and is successful. The Ahlers' farm operation and management skills are something of a value which would disappear if their farm was liquidated. Because that value cannot be recaptured for creditors in the event of liquidation, fairness is not violated if their Chapter 11 plan leaves that value in their hands. This view also recognizes the broad rehabilitative purposes of the bankruptcy act—to give a debtor with a reasonable chance of success and opportunity for a fresh start. Any other view would deny to most farmers the opportunity to take advantage of the reorganization provisions of

the Bankruptcy Code. Accordingly, the farmer should be entitled to participate in the plan to the extent of this contribution, even though more senior claims are not provided for in full under the plan. The only remaining question, therefore, is whether the farmers' new contribution is reasonably equivalent to the equitable ownership interest a farmer would retain under the plan.

We recognize that there is no mathematical formula which the bankruptcy court can apply to make this determination, and that this determination must necessarily depend on the facts in each case. However, the value of a farmer's labor, including the value of his experience and expertise in farming the land, should not be overly difficult to determine. Valuing the retained equitable ownership interest, however, is a more difficult problem." *Ahlers,* 794 F.2d at 403–404.

In *Ahlers,* the court relied upon the United States Supreme Court decisions of *Case v. Los Angeles Lumber Company, Ltd.,* 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110 (1939) and *Northern Pacific Railroad Company v. Boyd,* 228 U.S. 482, 33 S.Ct. 554, 57 L.Ed. 931 (1913). However, a careful review of these cases leads this Court to the conclusion that the holdings of these cases are contrary to the position taken by the Eighth Circuit in *Ahlers.*

In *Case,* not a sole proprietorship, but a corporation case, the stockholders of the corporation were to receive 23% of the stock in the reorganized company, without making any new capital contribution. *Case v. Los Angeles Lumber Company, Ltd.,* 308 U.S. 106, 112, 60 S.Ct. 1, 84 L.Ed. 110 (1939). They sought to justify their preferential treatment on the basis of their financial standing and influence in the community and their contribution of continuity of management to the debtor. *Id.* at 122, 60 S.Ct. at 10. The United States Supreme Court held that these proposed reasons for preferential treatment constituted "no legal justification for such preferential treatment." *Id.* Mr. Justice Douglas expressly stated that such things as financial standing in the community, which contribute to management continuity:

"are illustrative of a host of intangibles which, if recognized as adequate consideration for issuance of stock to valueless junior interests, would serve as easy evasions of the principle of full or absolute priority of *Northern Pacific Railroad Company v. Boyd,* supra, and related cases ... They have no place in the asset column of the balance sheet of the new company. They reflect merely vague hopes or possibilities. As such, they cannot be the basis for issuance of stock to otherwise valueless interests. The rigorous standards of the absolute or full priority doctrine ... will not permit valueless junior interests to perpetuate their position in an enterprise on such ephemeral grounds." *Case,* 308 U.S. 106, 122–123, 60 S.Ct. 1, 10–11.

Thus, it appears that the Eighth Circuit holding in *Ahlers* is inconsistent with the current position of the United States Supreme Court on this issue. The dissent in *Ahlers* makes note of this fact. The dissent asserts that labor and management contributions are not liquid and because they are not they are not afforded the protection to unsecured creditors that capital contribution affords. *In re Ahlers,* 794 F.2d at 407. If the plan fails and liquidation ultimately occurs, labor contributions which had been ascribed a value when the plan was confirmed could not be liquidated for distribution. *Id.* at 407.

Equally important is the fact that this Court's adoption of the Stegalls' position would result in different treatment of sole proprietorships under Chapter 11 of the Bankruptcy Code than would be given to corporations. Such a result cannot be the intention of Congress. As the Court in *In re Pecht,* supra, stated:

"The sole proprietor would be allowed to use future income of the business, solely and without an initial contribution, to retain his proprietary interest in a non-exempt property of the estate. The intended result would be an attempt to create a new equity interest in the debtor, allowing that debtor to continue his original proprietary interest in the assets of the sole proprietorship and at the same time violate the clear statutory de-

mands of § 1129(b)(2)(B)(ii). The analogy to this would be to allow a corporation to use only its future earnings to accomplish the same result for the benefit of its stockholders without infusion of additional capital. That too would completely refute the absolute priority rules well defined in § 1129(b)(2)(B)(ii)." *Pecht,* 57 B.R. 137, 141.

In sum, it is this Court's opinion that the *Ahlers* decision is contrary to the United States Supreme Court's position on the use of labor and management as a capital contribution. Further, it appears that the use of labor and management as a capital contribution is contrary to the clear statutory demands of § 1129(b)(2)(B)(ii). Even further still, the use of labor and management as a capital contribution in a sole proprietorship case would result in different treatment of sole proprietorships and corporations. This Court cannot adopt such a position. Therefore, the Court concludes that the Stegalls' proposed contribution of labor, management, and skill as a contribution of new capital are insufficient to satisfy the absolute priority rule exception and concerns with the bankruptcy court's exclusion of this contribution for the purpose of evaluating the Stegalls' Plan.

██ The last issue before this Court is whether the remaining contributions proposed in the Stegall reorganization plan are sufficient to satisfy the "fair and equitable" requirement of 11 U.S.C. § 1129(b)(2)(B)(ii. As previously noted, the Stegalls propose several contributions. First, they propose the post petition production loan obtained from the Anderson Bank in the amount of $15,000. The record reflects that this loan is secured by a first lien on the 1986 crops. 11 U.S.C. § 541 of the Bankruptcy Code provides that the property of a debtor's estate includes all assets except: (1) his interest in a spend thrift trust and (2) his personal post petition earnings. Section 541(a)(6) expressly establishes that crops constitute proceeds from the property of the estate. Therefore, the Court concludes that the proceeds of the Anderson State Bank loan do not constitute new capital, because the $15,000 loan is more properly characterized as property of the debtor's estate.

Second, the Stegalls propose the contribution of Mr. Stegall's exempt Veterans pension of $66 per month. The Plan reflects that Mr. Stegall's pension will be used for living expenses, regardless of whether the Court deems it to be a contribution of new capital. Although perhaps substantial to the Stegalls, this Court cannot find it to be a substantial capital contribution. Further, the Stegalls concede that this pension contribution would be made monthly over the life of the Plan. Thus, the Court also finds this contribution to be a future contribution.

Third, similar to Mr. Stegall's pension, the Stegalls propose the assumption of their daughter's car loan by their daughter as a new capital investment. The loan, which has already been paid off, is in the amount of $931. Again, this Court finds it impossible to hold this sum to be "substantial."

Fourth, the Stegalls propose a contribution of the USDA deficiency payments. As set forth in the Stegalls' brief, deficiency payments are "contractual payments made to the farmer by the Agricultural Stabilization and Conservation Service of the United States Department of Agriculture. In order to become eligible, the farmer must set aside 20% of his crop land and plant it with a cover crop. In turn, the Government pays the producer certain subsidies, some in cash and some in the form of negotiable certificates, which can be converted to grain, the so-called generic PIK certificates. See *J. Catton Farms, Inc. v. First National Bank of Chicago,* 779 F.2d 1242 (7th Cir.1985)." (Appellant's Brief, p. 7).

The Court finds two difficulties with these payments. The first is that the Court deems these payments to be assets of the estate. As in the case of the Anderson State Bank loan, these payments constitute proceeds from the crops planted on the Stegalls' farm land. Therefore, they cannot constitute new capital investment pursuant to § 541(a)(6). Additionally, these payments, similar to Mr. Stegall's Veteran pension, would be payments in the future, and not up front contributions at the time of confirmation.

Fifth, the Stegalls propose the contribution of sealing profits. Also set out by the Stegalls in their brief, sealing profits "result when the farmer seals, i.e., obtains a non-recourse loan secured by grain (his crop) for the commodity credit corporation. If cash corn is $1.20 per bushel and the CCC loan which the farm can obtain on it is $1.84 per bushel, the sealing profit is $.64. See *In re George*, 62 B.R. 671 (Bankr.D.C. Ill.1986, Altenberger, J., appeal pending, U.S. District Court, C.D.Ill.)" (Appellant's Brief, p. 7). As the Stegalls concede, such payments are practically characterized as a sale. For the same reasons set forth concerning the deficiency payments, this Court again concludes that the sealing profits are both property of the estate pursuant to § 541(a)(6) and a future contribution.

Sixth, the Stegalls propose the contribution of Mrs. Stegall's income from a part time librarian position at Carl Sandburg College. Identical to the considerations set forth in this Court's discussion of Mr. Stegall's contribution of his Veteran pension, the Court concludes that this contribution is both insubstantial and a future contribution. Additionally, the Court must recognize the uncertainty of this contribution, in light of the fact that Mrs. Stegall could terminate her employment or be involuntarily terminated by her employer at any time in the future. Therefore, this contribution lacks the "fixed and certain amount of new value" required by the courts. *See, Marston*, supra.

Seventh, the Stegalls propose a contribution of income from livestock purchased post petition (i.e., 18 cows, 20 sows and 100 pigs). Analogous to this Court's position on the contribution of Mrs. Stegalls's income from her part time employment, the contribution of income from the livestock operation also lacks the "fixed and certain amount of new value" required by the *Marston* case. As noted by the Appellees, it is impossible to predict profitability of the livestock operation in the future. Further, such a contribution must be deemed a future contribution. The Court also concludes that such a contribution is insubstantial because the contribution would amount to only 10% of the gross income from the farming operation.

Lastly, the Stegalls propose the contribution of Mr. Stegall's brother's agreement to assume the risk of loss on the England lease, to provide a no-interest loan to the Stegalls, and to divide equally any profits from the England 140 acre farm. Again, this Court finds such a contribution to be a future contribution, indefinite in terms of length of the lease agreement with the Englands and also lacking the "fixed and certain" requisites.

The Court recognizes that the Stegalls' proposed contributions must be considered in totality. However, even reviewed in that light, this Court concurs with the position of the bankruptcy court, which deemed the fatal flaw in the Stegalls' Plan to be that it did not propose any funding up front which would constitute a contribution of new capital. Despite the very unfortunate result, this Court must not lose sight of the equitable considerations and the protection of creditors that the absolute priority rule was intended to provide. It is not to say that a modification of the absolute priority rule might not be appropriate in light of the recent events in the farm industry. However, as this Court previously asserted, such a modification is only appropriate for Congress, not this Court. Therefore, this Court AFFIRMS the decision of the Bankruptcy Court.