**In the Matter of 47TH AND BELLEVIEW PARTNERS, Debtor.**

**Bankruptcy No. 88–02836–3–11.**

United States Bankruptcy Court, W.D. Missouri, W.D.

Dec. 23, 1988.

Irvin V. Belzer, Paul M. Hoffman, Smith, Gill, Fisher & Butts, Kansas City, Mo., for debtor.

Dennis M. Garvis, Morrison, Hecker, Curtis, Kuder & Parrish, Kansas City, Mo., for Nationwide Life Ins. Co.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER DENYING CONFIRMATION OF PROPOSED PLAN OF DEBTOR AND CONFIRMING PLAN OF NATIONWIDE LIFE INSURANCE COMPANY

DENNIS J. STEWART, Chief Judge.

On December 19, 1988, the general issue of confirmation *vel non* came on before the court for hearing, at which time the court narrowed the particular issue to be heard and determined to that of whether the debtor's proposed plan of reorganization violated the absolute priority rule. Although other issues were raised in opposition to confirmation of the debtor's plan, the issue of absolute priority appeared to be a threshold issue, for, without observance of that rule, the court could not confirm the debtor's chapter 11 plan. See § 1129(b)(2)(C) of the Bankruptcy Code. Therefore, the court determined, at the outset of the hearing of December 19, 1988, that the issue of absolute priority should be heard and determined separately and in advance of all the other issues.

In the hearing which was then held, the debtor offered but a paucity of evidence on the issue thus extrapolated. The evidence which was adduced was to the effect that, over the term of the plan, there will be a deficiency in income to annual plan payments of about $139,000 per year. For instance, there will be a negative cash flow of $139,944 in 1989. According to the evidence adduced by the debtor, this deficiency is to be paid under the terms of a guarantee executed by the debtor's general partner, who will admittedly retain an interest in the debtor of considerable magnitude. According to the contention of the objecting creditor Nationwide Life Insurance Company, the interests retained include, *inter alia,* a 65% interest in net cash flow, a deed of trust on certain real property, and the continuing interest in the partnership itself. The evidence which was offered by the debtor in the hearing of December 19, 1988, purported to show that the general partner's potential contribution under his guarantee would have a present value of $520,000. This was, in reality, the only direct and material evidence offered by the debtor on the absolute priority rule, although, in summarizing the debtor's contentions, counsel for the debtor contended that the 65% of cash flow to be retained by the general partner has a value, when appropriately discounted in light of the risks involved and of the general partner's "equity interest," which is "either negative or close to zero." The projected net cash flow under the plan, according to the debtors' projections is $1,356,000.

Under the provisions of § 1129(b)(2)(C) of the Bankruptcy Code, observance of the absolute priority rule is a necessary prerequisite to confirmation of a chapter 11 plan. The sum and substance of the absolute priority rule is that, "[i]f a junior class retains an interest while a senior class is not paid in full, the absolute priority rule is violated and the plan cannot be confirmed." *Matter of Global Intern. Airways Corp.*, 76 B.R. 700, 704 (Bkrtcy. W.D.Mo.1987). "[A] dissenting class of unsecured creditors must be provided for in full before any junior class may receive or retain any property under the plan, unless the junior class contributes to the reorganization enterprise something that is reasonably compensatory and is reasonable." *Matter of C & P Gray Farms, Inc.*, 70 B.R. 704, 709 (Bkrtcy.W.D.Mo.1987). There can be little doubt, under the facts admitted in this case, that the general partner in this case would retain an interest in the partnership—an interest which debtor's counsel has referred to as his "equity interest." And "[t]here is little doubt that a reorganization plan in which respondents retain an equity interest in the [debtor's property] is contrary to the absolute priority rule." *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 108 S.Ct. 963, 966, 99 L.Ed.2d 169 (1988). Further, in order to come within the "contribution" exception to the absolute priority rule, the junior class must make "a contribution in money or money's worth, reasonably equivalent in view of all the circumstances to the participation of the [junior class in the plan]." *Case v. Los Angeles Lumber Products Co.*, 308 U.S. 106, 121–122, 60 S.Ct. 1, 10–11, 84 L.Ed. 110 (1939). In this case, as found above, the debtor justifies the general partner's retention of an interest by adverting to his promise, by way of a guarantee, to make up any shortfalls in plan payments to creditors—shortfalls which may or may not come to pass and which, even if they do not come to pass, (and the general partner accordingly pays nothing) will still mean that the general partner profits at the expense of creditors, who admittedly will not be paid 100% under the plan. Further, if a shortfall materializes, the evidence, as is further pointed out below, does not establish that the contribution which may be made by the general partner is "money or money's worth, reasonably equivalent in view of all the circumstances to the participation [of the general partner]" within the meaning of *Case v. Los Angeles Lumber Products Co., supra.* For, beyond the speculation that the debtor has indulged itself in referring to its own projections and asking the court to conclude that a potential shortfall is $520,000 in current value, there is no certainty that the general partner will pay anything approaching that amount or that, in fact, he will pay anything. This court believes that such a contingent promise to contribute cannot constitute the kind of contribution—"reasonably equivalent in view of all the circumstances to the participation of" the general partner within the meaning of *Ahlers, supra*—which brings the plan within any recognized exception to the absolute priority rule. In *Ahlers, supra*, the Supreme Court of the United States clearly held that the value of the proposed contribution must be "[v]iewed from the time of approval of the plan" and that if, as of that time, the promise to pay or perform is "intangible, inalienable, and, in all likelihood, unenforceable," it cannot be recognzied as a substantial contribution of capital. 108 S.Ct. at 967. Certainly, as of this time, the guarantee executed by the general partner is unenforceable. This clear holding of the Supreme Court in the *Ahlers* case seems clearly to overrule the prior decisional holdings to the effect that "[t]he test is whether the shareholders [or other junior class members] are assuming an economic risk." *In re Sawmill Hydraulics, Inc.*, 72 B.R. 454, 457 (Bkrtcy.C.D.Ill.1987). For, under the *Ahlers* rationale, there must be more than an assumed risk; there must be a certainty, at the time of approval of the plan, that there is or will be a contribution in "money or money's worth." Further, even the pre-*Ahlers* decisions which hold that a guarantee may constitute a "substantial capital contribution" rely as the seminal decision upon *In re Potter Material Service, Inc.*, 781 F.2d 99, 103 (7th Cir. 1986), in which the debtor was able to

establish the "reasonable equivalence" of the capital contribution to the total "going concern" value of the debtor entity without considering the "undeterminable value" attributed to the guarantee.

And even those pre-*Ahlers* decisions recognize the need for a non-contingent contribution. See *In re Future Energy Corp.*, 83 B.R. 470, 499 (Bkrtcy.S.D.Ohio 1988), to the following effect:

"Finally, the Court notes that it has not considered Canyon's [the proposed shareholder's] promise to fund the proposed five percent distribution to unsecured creditors (in the event Future is unable to do so from post-petition revenues) as a component of Canyon's capital contribution. It is well established that a new capital investment must be a present contribution, *not a contribution promised in the future.*" (Emphasis added)

■ Further, separately and independently, even if the court must accept the general partner's guarantee as a "substantial capital contribution," within the meaning of the foregoing cases, it could not, on the basis of the evidence before it, hold that it constitutes a contribution "reasonably equivalent" in value to the interest which the general partner will retain. As mentioned above, there was no evidence on the value of the retained interest, other than the rather conclusionary statements of debtor's counsel at the conclusion of the hearing which, even if wholly accepted, could only have accounted for a *portion* of the value being retained. "The Debtor had the burden of proving the value of the shareholder's retained interest and failed to do so. Therefore, this Court finds that the plan should not be confirmed, because the Debtor failed to establish [that] the capital contribution equals or exceeds the value of the ... retained interest in the reorganized Debtor." *In re Sawmill Hydraulics Inc.*, *supra*, at 458. See also *In re Future Energy Corp.*, *supra*, at 499, to the following effect:

"Under the *Case* decision, the Court is required to make a comparison between the value of the shareholder's retained interest in the reorganized debtor and such shareholder's new capital investment in order to determine whether the new investment equals or exceeds the retained interest ... As the foregoing discussion indicates, the Court is unable to ascertain the value of Canyon's proposed capital contribution because of glaring deficiencies in the record ... [T]he incomplete record made by the Proponents at hearing likewise precludes the Court from determining a value for Canyon's retained interest in the Debtor."

"[T]he capital contribution must certainly result in a 100% pay out of unsecured creditors, which is not proposed under the Plan." *In re Rudy Debruycker Ranch, Inc.*, 84 B.R. 187, 190 (Bkrtcy.D.Mont. 1988). The debtor has thus failed to meet its burden of establishing that the value of the retained interest is "reasonably equivalent" to the capital contribution and confirmation of the debtor's plan must accordingly be denied.

### The proposed plan of Nationwide Life Insurance Company

■ The denial of confirmation of the debtor's proposed plan of reorganization compels the court immediately to consider the confirmability of the alternative plan submitted by Nationwide Life Insurance Company, a secured creditor of the debtor. The court had, in connection with earlier hearings in this matter, ruled that time was of the essence in achieving confirmation of a plan and had fixed the deadline of December 19, 1988, for the debtor's demonstrating to the court that it could present a confirmable plan. Accordingly, the issue of confirmation of Nationwide's plan was also heard on December 19, 1988, and there was then no contention that Nationwide's plan did not meet the requirements of the absolute priority rule and the "best interests of creditors" test. The only objection raised was that as to the plan's feasibility, and feasibility, under the literal wording of § 1129(a)(11) of the Bankruptcy Code, is unnecessary to be shown when "liquidation ... is proposed in the plan." The unobjected-to summary of the ballots, moreover, shows the existence of at least one actually impaired accepting class according to the requirement of § 1129(a)(10) of the Bank-

ruptcy Code. The court is therefore constrained to confirm the plan proposed by Nationwide Life Insurance Company.

Accordingly, for the foregoing reasons, it is hereby

ORDERED that confirmation of the debtor's proposed plan of reorganization be, and it is hereby, denied. It is further

ORDERED that the proposed chapter 11 plan of reorganization of Nationwide Life Insurance Company be, and it is hereby, confirmed subject to the following provisions:

(1) that the debtors shall remain subject to the provisions of section 523 and section 727 of the Bankruptcy Code; to the extent provided in 11 U.S.C. § 1141(d)(2) and (d)(3).

(2) that the court shall retain jurisdiction of this case to reopen it for any purpose until full consummation of the confirmed chapter 11 plan;

(3) that, within fifteen (15) days of the filing of this order counsel for the proponent of the plan [a] certify in a writing filed with this court that he has mailed copies of this order to all affected creditors and [b] completes the attached administrative form and returns it to this court.